STATE *vs.* ROSA VAN OSTEN.

JUNE 22, 1942.

PRESENT: Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. The defendant was found guilty of larceny from the person. Her motion for a new trial was heard and denied. The case is before us on her exception to the denial of this motion and on numerous exceptions taken during the trial.

The offense is alleged to have been committed between eleven o'clock and midnight of May 15, 1940, in a back yard of premises on Pond street in the city of Providence. The defendant and the complaining witness met by chance. The defendant testified that she came to Providence from Boston in an automobile, driven by a male companion, in the afternoon of May 15. The purpose of her coming here was to locate a certain Ernest Waters, whom she wanted to work for her in one of her rooming houses in Boston. She was driven to various places in Providence, including some "taverns", and, failing to find Waters anywhere, she finally decided to look for him on Pond street, where a family by the name of Bolands lived.

The defendant further testified that she alone got out of the automobile on Pond street, the driver waiting for her in the car. While looking for the house where the Bolands were supposed to live, the complaining witness came along, and he, after inquiring if she was a stranger in the neighborhood and what her mission was, informed her that the family she was looking for lived in the rear of the houses across the street; that they then crossed the street together and went through a passageway between two houses to a back yard, where there were some sheds but no dwelling; that he there made improper advances to her and began "mauling and pulling on me"; that she broke away from him and ran to her automobile, with the complaining witness in pursuit, where, upon his being asked by the driver what was the matter, he accused her of taking his money.

The defendant further testified that she got in the automobile and sat next to the driver; that the complaining witness also got in the automobile and sat next to her; that, at her direction, they went looking for a police officer; that they met one shortly thereafter; and that, when the car was stopped, the complaining witness told the officer that she had taken his money. The officer got into the automobile and took them all to the police station.

The complaining witness, a man fifty-two years old, lived on Pond street. He testified that he had spent the late evening walking around "down street", meaning "the heart of the city"; that on his way home and when he was almost in front of his house, an automobile, with a Massachusetts registration, stopped some fifty feet away from him; that a woman got out of that automobile and called: "Hey, Mister. Hey, Mister", which caused him to stop. What occurred thereafter, according to him, is best told by quoting his own testimony. "She came up to me and she got hold of my wrist and she started to cross the street. As she got across the street with me on the run she made approaches to me and I kept pushing her off, 'No,' and as I pushed her off at one time she throwed her arms around me. After

she throwed her arms around me I grabbed around to my hip pocket; as I grabbed there a hand slipped away from me and she gave me a push then and started out toward the street." The rest of his testimony is the relation of a midnight chase through alleys and back yards to the automobile; of his forcing himself into the automobile; and of his hailing a police officer, who brought them to the police station. This witness testified that he had $200 in a pocketbook, which he carried in his hip pocket.

A comb, a fountain pen, and a flashlight, which the complaining witness testified were on his person when he met the defendant, were found in the latter's possession when she was searched by a matron at police headquarters. The only money found on her person was $2.90, which she claimed as her own. A search of the defendant's male companion and of the car was fruitless. While this was going on, two police inspectors and the complaining witness went to Pond street and found the latter's pocketbook, but no money, in the back yard where he and the defendant had been.

We will first consider the defendant's exception to the denial of her motion for a new trial. The conflicting testimony in this case presented a clear question of fact for the jury to determine, and they decided that question adversely to the defendant. Their verdict was approved by the trial justice. Although he filed no rescript, as he gave his decision from the bench, he did spread upon the record before us the reasons for his decision, thus giving to the parties and to this court the benefit of his appraisal of the weight of the evidence and of the credibility of the witnesses. He concluded his review of the case with the following language: "There is no question, of course, that it is necessary for the jury to be satisfied of the defendant's guilt beyond a reasonable doubt. That is the rule in criminal cases and that is the rule in this case, but as I listened to the testimony and saw the witnesses and heard them it seemed to me that the jury could fairly find beyond a reasonable doubt that the

defendant was guilty as charged." From our examination of the evidence we find no cause to disagree with the trial justice in denying defendant's motion for a new trial. This exception is overruled.

We pass now to consider the other exceptions upon which the defendant relies. The sixth exception is directed to the ruling of the trial justice allowing the following question and answer to "stand for what it may be worth." "Q. Did you have it (the fountain pen) on your person when the defendant took hold of you? A. As far as I know it was *supposed* to be on my person at the time." (italics ours) Elsewhere in his testimony the witness positively testified that the pen was on his person at the time in question. All that the witness, a person of limited education, apparently meant by his answer was that, as far as he knew, he had the pen on his person when the defendant took hold of him. The exception is overruled.

The tenth exception relates to the exclusion of a question by the defendant in cross-examination of the complaining witness as to whether he did not "look over" to the defendant upon her entrance into the court room after a police inspector had spoken to him. The state objected to this question and the court sustained the objection after the witness had answered: "I did not." No motion having been made to strike out the answer, the defendant takes nothing by this exception. It is overruled.

The eleventh exception refers to the exclusion of a question in which the defendant's counsel attempted to summarize the testimony of the complaining witness respecting his conduct on Pond street. This question was improper, as it was a combination of inferences and conclusions. This exception is overruled.

The seventeenth exception is to the exclusion of defendant's question to a police officer asking what his superior told him to do with the defendant upon arriving at police headquarters. In the absence of an offer of proof, or of a claim by the defendant of improper treatment while at

police headquarters, there was no error in excluding the question. The exception is overruled.

Exceptions 36, 37, 38 and 39 are to questions allowing the state to inquire of the defendant as to her name, residence, occupation, and by whom employed before going to Boston, where she had resided for some two years. The defendant having testified that she was in the rooming house business in Boston, which required a license from the police authorities, it was proper to inquire, within reasonable limits, as to her previous activities. These exceptions are without merit. They are overruled.

Exceptions 40, 41 and 42 relate to the allowance of certain questions by the state to two officers of the Boston police department respecting the defendant's reputation for truth, honesty and morality. The defendant put her reputation as to these traits in issue through the testimony of a real estate broker, with whom she had dealt in a business way. One objection which she urges in her brief to the testimony of reputation by the officers is that neither of them lived in her neighborhood, and that one of them did not "travel the beat as a policeman in her neighborhood." Another objection is that it did not appear whether the officers' testimony "related to a period before, during or after the commission of the offense with which defendant was charged and on trial."

The defendant's first objection is without merit. We have examined the evidence respecting the competency of the officers to testify concerning the defendant's general reputation and find that, as to one officer, there was sufficient foundation testimony to establish his competency; and that, as to the other officer, the defendant failed to object to his competency. In both instances, the defendant's objections, as they appear of record, were directed mainly to the answers that the officers gave rather than to their competency as witnesses in the matter of defendant's reputation. We find no prejudicial error in the rulings of the trial justice on this point.

With reference to the defendant's second objection, we agree with her that evidence of reputation must be confined to proof of reputation at or prior to the commission of the offense and at a date not too remote therefrom. But her contention in the instant case that the officers' testimony may have referred to her reputation after ·the commission of the offense for which she was on trial is denied by the record before us. Our examination of their testimony clearly shows that such testimony was confined to her reputation before the commission of the offense. The exceptions are overruled.

Exceptions 43 and 44 are to the denial of defendant's motion to take the case from the jury and order a mistrial because of alleged prejudicial statements made by one of the Boston police officers, during his testimony, as to defendant's reputation. After this witness had completed his direct testimony, he was cross-examined at considerable length by the defendant. Following the conclusion of his testimony, three other witnesses testified. It was not until the case had been closed by both sides and arrangements had been made by the trial justice with counsel as to when they would argue the case that the defendant made the motion now under consideration.

The above exceptions are untenable for three reasons: First, the defendant's objection was directed to the form of the question and not to the answer that the officer gave. Secondly, a certain term used by the officer was stricken from the record at the defendant's request, while another term, to which she now objects, was allowed by her to go unchallenged. Thirdly, she made no timely motion to pass the case on the ground of prejudice. These exceptions are overruled.

The forty-fifth exception is to that portion of the charge in which the trial justice, after pointing out that the testimony was conflicting, expressed his "confidence" that the jury, which was constituted of "mature" persons "trained in determining the value" of what the witnesses had said

while testifying, would "reach a proper and accurate result." We find nothing prejudicial to the defendant in such statement. This exception is overruled.

Exception 46 refers to a statement in the charge where the trial justice, in explaining the effect of reputation testimony, told the jury that they should first consider the reputation evidence because "after all you are trying to decide who is telling the truth." While it may have been indiscreet for the trial justice to indicate the order in which the jury was to consider such evidence in the circumstances of this case, we find that he nevertheless fully protected the rights of the defendant. For instance, after fairly explaining to the jury the purpose and value of reputation evidence, he told them: "Now, that does not necessarily prove the crime that has been alleged here even though you should find that this defendant's reputation was bad. . . . You don't directly, as I say, convict a person of a given crime by finding or accepting testimony that that person's reputation is bad . . . ." Upon a careful examination and consideration of the charge as a whole, which we find to have been full and fair in all other respects, we are convinced that the defendant could not have suffered any prejudice from the statement in question. This exception is overruled.

The exceptions which the defendant has not expressly waived, but which were neither briefed nor argued, are deemed to be waived. Other exceptions not specifically mentioned by us have been considered and found to be without merit.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*John H. Nolan*, Attorney General, *Hyman Lisker*, Assistant Attorney General, for State.

*Joseph G. LeCount*, for defendant.